UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Benjamin Ashenburg,<br><br>                      Plaintiff,<br><br>    v.<br><br>City of South Bend; Martin Mullins and Michael Stuk, individually and in their official capacity as South Bend Police Officers; Alvin Taylor, Kayla Dawson, Harrison Rich, and Jeremy Reed, individually and in their official capacity as Indiana State Excise Police officers,<br><br>                      Defendants. | Civil Action No. 3:12-CV-427-JVB |

**OPINION AND ORDER**

In this § 1983 lawsuit, Plaintiff Benjamin Ashenburg alleges officer misconduct during his August 29, 2010, arrest. Plaintiff claims the officers wrongly entered his apartment, prevented him from filming their activities, and used excessive force in arresting him. He asserts that these actions violated his First, Fourth, and Fourteenth Amendment rights. Plaintiff also alleges that Defendants' actions constitute false arrest, false imprisonment, battery, and trespass under state law.

After discovery closed, the City of South Bend Defendants ("City Defendants") and the State of Indiana Defendants ("State Defendants") each moved for summary judgment on all claims in separate summary judgment motions. Upon review, the Court grants summary judgment in part and denies in part as detailed below.

**A.      Summary Judgment Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B. Section 1983 Standards**

Under 42 U.S.C. § 1983, Plaintiff alleges in his Amended Complaint violations of his First, Fourth, and Fourteenth Amendments rights. Section 1983 provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687, 749 n.9 (1999). A cause of action may be brought under § 1983 against "[e]very person who, under color of statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction therefor to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

**C. Background**

In the early morning hours of August 29, 2010, Plaintiff and his roommates were hosting a gathering of Notre Dame students in their apartment. (DE 24, Am. Compl. at 2–3.) Excise officers observed the apartment, attempted to enter and investigate the apartment without a warrant, and were denied entry. (*Id*. at 3.) As a result, one of the Indiana State Excise Police ("ISEP") officers completed an affidavit alleging that she observed underage drinking and a warrant was issued. (*Id.*) At this point, the ISEP officers were joined by two City of South Bend police officers.

The ISEP and South Bend police officers jointly executed the warrant by breaking down the door to Plaintiff's apartment. (*Id*.) Upon entry, the ISEP officers organized Plaintiff and his guests into two lines and began checking identification of the guests and administering breathalyzer tests. Plaintiff, originally standing in one of these lines, began recording the ISEP officers and was told to stop recording. (*Id.*) Plaintiff asserts that he was attempting to put the

3

camera away and was struck in the face by one of the ISEP officers, which caused him to awkwardly fall against a glass door. After falling, Plaintiff claims that he was struck by several officers, shot with a taser gun, subjected to a "drive stun" by a taser gun, placed in a chokehold, and arrested.[1] (*Id.*) Plaintiff was held in jail for over a day and charged with battery to a law enforcement officer, underage consumption of alcohol, and resisting law enforcement. (*Id.* at 4.) The state subsequently dropped all charges against Plaintiff.

In his Amended Complaint, Plaintiff claims that Defendants' conduct violated his First, Fourth, and Fourteenth Amendment rights, as well as his state law rights. First, Plaintiff contends that when the officers prohibited him from filming their activities they prevented him from exercising his First Amendment right. Next, Plaintiff asserts that the officers violated his Fourth Amendment rights in five separate ways: (1) using excessive force; (2) failing to intervene and prevent others from using excessive force; (3) seizing Plaintiff's recording without a warrant or probable cause; (4) misleading the Court in obtaining a search warrant; and (5) executing the search warrant in an unreasonable manner. Third, Plaintiff claims the Defendants violated his Fourteenth Amendment due process rights by destroying evidence and misrepresenting the facts to portray Plaintiff as the aggressor. Finally, Plaintiff contends that Defendants actions violated Indiana tort law for false arrest, false imprisonment, excessive force, battery, and trespass.

**D. Defendant's Motion for Summary Judgment**

The City Defendants and State Defendants filed separate motions for summary judgment on all claims. However, excessive force cases are not generally decided at the summary

---

[1] In "drive stun" mode, a police officer presses the taser to a subject's body and then pulls the trigger to emit a current and the deployment lasts as long as the trigger is pulled or for a maximum duration of five seconds. *See Cyrus v. Town of Mukwonago*, 624 F.3d 856, 859 n.1 (7th Cir. 2010). The use of a taser in drive stun mode causes temporary, localized pain in contrast to the use of a taser in dart mode which involves embedding a barbed electrical probe into the person's body and causes muscular contractions and more severe pain. *Brooks v. City of Seattle*, 599 F.3d 1018, 1026–28 (9th Cir. 2010).

4

judgment stage. The primary reason for this is that "[w]here the parties present two vastly different stories . . . it is almost certain that there are genuine issues of material fact in dispute." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Similarly, "summary judgment cannot be used to resolve swearing contests between litigants." *Weeks v. Samsung Heavy Indus.*, 126 F.3d 926, 933 (7th Cir.1997). Plaintiff maintains that he was not resisting arrest and was assaulted by Defendants. State Defendants and City Defendants both dispute this account, but these are questions of fact. As a result, the vast majority of Plaintiff's claims will survive summary judgment. Nonetheless, Defendants are correct that qualified immunity protects their officers from liability on Plaintiff's First Amendment claims. Also, State Defendants are correct that sovereign immunity protects their officers from being sued in their official capacity. Accordingly, the Court grants summary judgment as to these two claims and denies summary judgment on all remaining claims.

*(1) Plaintiff's First Amendment Claims Fail Against All Defendants*

The doctrine of qualified immunity protects government officials, including police officers, from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When determining if qualified immunity applies, courts focus on the objective reasonableness of the defendant's actions. The court is tasked with determining "whether a reasonable police officer could have believed that [his] conduct was constitutional in light of the clearly established law and the information [he] possessed at the time." *Frazell v. Flanigan*, 102 F.3d 877, 886 (7th Cir. 1996). Furthermore, under the doctrine of qualified immunity, "officials are not liable for bad

5

guesses in gray areas: they are liable for transgressing bright lines." *Gordon v. Whitted*, 2005 U.S. Dist. LEXIS 48795, at *28 (N.D. Ind. May 27, 2005).

Courts ask two questions when determining whether public officials are entitled to qualified immunity: (1) whether the officials' actions violate the Constitution, and (2) whether the constitutional right was clearly established at the time of the officials' alleged misconduct. *Abbott v. Sangamon County., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). Importantly, the plaintiff bears the burden of demonstrating the violation of a clearly established right. *Forman v. Richmond Police Dep't.*, 104 F.3d 950, 957–958 (7th Cir. 1997). A violation is only "clearly established where: (1) a closely analogous case establishes that the conduct is unconstitutional; or (2) the violation is so obvious that a reasonable state actor would know that his actions violated the Constitution." *Siebert v. Severino*, 256 F.3d 648, 654–55 (7th Cir. 2001).

The second prong of the qualified immunity inquiry is most critical and examines "whether, in light of precedent existing at the time, [the officials were] plainly incompetent" in pursuing their chosen course of action. *Stanton v. Sims*, 134 S. Ct. 3, 5 (U.S. 2013) (finding a police officer was not plainly incompetent, and thus entitled to qualified immunity, when entering a third-party's residence while in hot pursuit of a misdemeanor suspect). In Stanton, the Supreme Court reiterated that it does "not require a case directly on point before concluding that the law is clearly established, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 4–5 (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)). Moreover, a split amongst the judicial circuits on a particular issue is "indicative of the fact that [an issue is] currently unsettled as a matter of constitutional law and therefore [is] not clearly established at the time [in question]." *Upton v. Thompson*, 930 F.2d 1209, 1217 (7th Cir. 1991).

Even if the Court found Plaintiff did have a constitutional right to film the officers, such a right was not clearly established at the time of the Defendants' alleged misconduct.[2] As discussed above, to satisfy this requirement there must be existing precedent that places the statutory or constitutional question beyond debate. *Stanton*, 134 S. Ct. at 5. In the present case, no precedent existed in the Seventh Circuit that adequately addressed this issue at the time of Plaintiff's arrest. Even if *Alvarez* was directly on point, which the Court does not believe it is, it was not decided until almost four years after the events occurred within Plaintiff's apartment.

Moreover, the judicial circuits throughout the country were split on this issue at the time of Plaintiff's arrest. *See Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000) (finding Plaintiffs had a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct); *Kelly v. Borough of Carlisle*, 622 F.3d 248, 262 (3d Cir. 2010) (finding that "there was insufficient case law establishing a right to videotape police officers during a traffic stop to put a reasonably competent officer on fair notice that seizing a camera or arresting an individual for videotaping police during the stop would violate the First Amendment); and *Szymecki v. Houck*, 353 Fed. Appx. 852, 853 (4th Cir.2009) (affirming summary judgment on a qualified immunity defense because the "right to record police activities on public property was not clearly established in this circuit at the time of the alleged conduct."). Accordingly, Defendants' summary judgment motion on the First Amendment issue is granted.

---

[2] In attempting to establish a constitutional right, Plaintiff has relied upon cases where the individual was filming police activity in a public place and was arrested solely for violating an eavesdropping statute. In *Glik*, *Alvarez*, and *Gericke*, the Plaintiff was an uninvolved onlooker filming the activities of police officers. In the present case, Plaintiff was being investigated by the excise officers for illegal possession of alcohol, a Class C misdemeanor. While Alvarez did establish a general right to film police officers in the execution of their duties, such a right is still subject to reasonable time, manner and place restrictions. *Alvarez*, 679 F.3d at 601 n.10. To extend those cases to the facts present here would require officers, even when investigating a suspect who they believe may be violating the law, to allow the suspect to film their activities throughout the investigation.

*(2) State Defendants' Sovereign Immunity*

State Defendants, in their motion for summary judgment, argue that Plaintiff's § 1983 claim against them in their official capacities is barred by the Eleventh Amendment's grant of sovereign immunity to the states. The State Defendants are correct. The central tenet of sovereign immunity is the intrinsic right of a sovereign to be immune from a lawsuit brought by a private citizen, without the consent of the state. *Alden v. Maine*, 527 U.S. 706, 715 (1999). The Eleventh Amendment also bars an action in federal court directed at a state agency or the officials of that agency, if they are acting in their official capacities. *Gossmeyer v. McDonald*, 128 F.3d 481, 487 (7th Cir. 1997) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–102 (1984)).

There are three instances when a litigant may bring suit against a state, a state agency, or an agency official, despite the Eleventh Amendment's grant of sovereign immunity. First, if the state consents to the lawsuit being brought in federal court, a litigant may proceed with the action. *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992). Next, if Congress, pursuant to the Fourteenth Amendment or the Interstate Commerce Clause, abrogates the state's Eleventh Amendment immunity, litigants may sue the state or its agencies. *See Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 19–20 (1989). Finally, a suit may proceed in federal court against state agency officials if it is raised in their individual capacity. *Scott*, 975 F.2d at 369.

Plaintiff's claim against State Defendants in their official capacity fails because the state's Eleventh Amendment immunity extends to § 1983 claims. To avoid this result, Plaintiff asserts that the *Young* exception to Eleventh Amendment sovereign immunity applies in this case. The *Young* exception allows a plaintiff to file suit against state officials, in their official capacities, if they are "seeking prospective equitable relief for ongoing violations of federal law." *Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 371 (7th

Cir. 2010) (explaining *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). The *Young* exception allows these suits based upon the reasoning that "when a state official violates the federal Constitution, that official acts outside the scope of his or her authority and is no longer entitled to the state's immunity from suit." *Young*, 209 U.S. at 155–56. For the reasons stated below, the *Young* exception is inapplicable here.

The *Young* exception applies only if the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. PSC*, 535 U.S. 635, 645 (2002). To determine this "a court need only conduct a straightforward inquiry." *Ameritech Corp. v. McCann*, 297 F.3d 582, 587 (7th Cir. 2002) (citing *Verizon Md., Inc.*, 535 U.S. at 645.). The analysis here is simple. Plaintiff is attempting to remedy past conduct of a state agency official. There is no prospective relief sought, nor is there any alleged on-going violation of federal law by the State Defendants. Accordingly, State Defendants motion for summary judgment is granted on this issue.

**E. Conclusion**

The parties present two vastly different stories of what occurred, which creates numerous issues of disputed material facts. Nonetheless, the Court has found two issues that are unaffected by these disputed issues. Accordingly, the Court grants Defendant's motion for summary judgment on the First Amendment and official capacity claims and denies the motion on all other grounds.

SO ORDERED on October 28, 2014.

    s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE